UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Gambino Menchaca, | No. 1:23-cv-1334-JLT-GSA |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DIRECT JUDGMENT FOR DEFENDANT** |
| v. | |
| Commissioner of Social Security, | **(Doc. 16, 20)** |
| Defendant. | |

### I.    Introduction

Jose Gambino Menchaca seeks judicial review of the Commissioner's decision denying supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

### II.    Factual and Procedural Background

Plaintiff applied for SSI on November 4, 2020.  The Commissioner denied the application initially and on reconsideration.  AR 90, 99.  Plaintiff appeared for a hearing before an ALJ on July 5, 2023.  AR 32–54.  The ALJ issued an unfavorable decision on July 14, 2023.  AR 12–31.  The Appeals Council denied review on July 25, 2023, and this appeal followed.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  See Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Docs. 7, 10.

1

may not affirm simply by isolating a specific quantum of supporting evidence." Robbins v. Social Security Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).

2

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from the application date of November 4, 2020.  AR 17.  At step two the ALJ found that Plaintiff had <u>no</u> severe impairment, and the following non-severe impairments: history of polysubstance abuse/addiction (opioid (intravenous (IV) heroin) and methamphetamines (now on methadone maintenance); alcohol use in remission; hepatitis C; hypoglycemia; rash; dermatitis (neck rash); major depressive disorder; unspecified anxiety disorder; gastroesophageal reflux disease (GERD); and lumbar spine problem (mild lumbar spine disc height loss L5-S1/mild anterior marginal spurring L2-5/mild diffuse facet hypertrophy).  AR 17–18.

The ALJ concluded the claimant did not have an impairment or combination of impairments that significantly limited, or was expected to significantly limit, the ability to perform basic work-related activities for 12 consecutive months. The ALJ thus concluded that the claimant did not have a severe impairment or combination thereof under 20 CFR 416.921 et seq (AR 18–27) and accordingly found Plaintiff was not disabled since the application date of November 4, 2020.  AR 27.

## V.    Issue Presented

Plaintiff asserts that the ALJ's finding of no severe mental health impairment was unsupported by substantial evidence.  Plaintiff specifically disputes the ALJ's rejection of Dr. Butler's opinion that Plaintiff was moderately impaired in his ability to deal with workplace stress. Plaintiff also disputes the ALJ's rejection of his subjective testimony, a discussion interwoven into Plaintiff's broader argument about the severity of his mental health impairment (chiefly anxiety). As such, the issues will be addressed together.

### A.    Applicable Law

#### 1.    Step Two Severity Threshold

At step two, the ALJ must determine if the claimant has a medically severe impairment or combination thereof.  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20  C.F.R.

§§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: 1- physical functions such as walking, standing, sitting, lifting, and carrying; 2- capacities for seeing, hearing, and speaking; 3- understanding, carrying out, and remembering simple instructions; 4- use of judgment; 5- responding appropriately to supervision, co-workers, and usual work situations; and 6- dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The step-two severity threshold is not high.  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."  Smolen, 80 F.3d at 1290.  "Step two, then, is a de minimis screening device [used] to dispose of groundless claims[.]"  Smolen, 80 F.3d at 1290.

## 2.  Medical Opinions

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  Id.

## 3.  Subjective Testimony

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.  An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10.

**B.    Analysis**

**1.    Dr. Butler's Opinion Does Not Establish A Severe Impairment Even If Adopted**

Per the regulations, "when we rate your degree of limitation in [the paragraph B criteria] (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme."  20 C.F.R § 416.920a(c)(4).  An impairment causing no more than mild limitations in any area is generally considered a non-severe impairment. 20 C.F.R. § 416.920a(d)(1).  The agency also considers whether the claimant has an impairment or combination thereof that significantly limits performance of basic work activities.  *See* 20 CFR 416.920a(d)(1).

Here, the ALJ determined that Plaintiff had no more than mild limitations in any of the four domains of functioning, and that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities. The ALJ therefore concluded that Plaintiff had no severe mental impairment

Relatedly, on June 30, 2021, Dr. Butler conducted a consultative psychological examination of Plaintiff at the request of the agency.  AR 311–314.  Dr. Butler rendered a functional assessment at the end of the evaluation, opining that Plaintiff was: 1- incapable of managing his own funds; 2- mildly impaired in his ability to perform simple and repetitive tasks; 3- mildly impaired in his

5

ability to perform detailed and complex tasks; 4- <u>unimpaired</u> in his ability to accept instructions from supervisors; 5- <u>unimpaired</u> in the ability to interact with coworkers and the public; 6- <u>mildly impaired</u> in his ability to perform work activities without special or additional instruction; 7- <u>mildly impaired</u> in his ability to maintain regular attendance and complete a normal workday and workweek without interruptions from a psychiatric condition; and 8- <u>moderately impaired</u> in his ability to deal with the usual stress encountered in the workplace.  AR 314 (emphasis added).

Plaintiff relies heavily, if not exclusively, on the 8th finding within Dr. Butler's functional assessment and critiques the ALJ's reasoning for rejecting same. However, it is important to note at the outset here that even accepting Dr. Butler's functional assessment in full, including the moderate impairment as to stress tolerance, it would not necessarily establish a severe mental impairment because it would not establish more than mild limitations in the <u>paragraph B criteria</u> (the four functional domains set forth above), nor constitute a significant limitation in the claimant's ability to perform basic work activities as listed above.  <u>See</u> 20 CFR 416.920a(d)(1).

As Defendant explains, and to which Plaintiff did not reply, caselaw has similarly held that a moderate limitation with respect to one work activity does not translate into a severe mental impairment.  <u>See</u>, <u>e.g.</u> <u>Koehler v. Astrue</u>, 283 Fed. Appx. 443, 445 (9th Cir. 2008) (unpublished) (ALJ properly found claimant's mental impairment was not severe, because contrary to claimant's assertion, a treating doctor's opinion that claimant had "a moderate mental impairment" did not translate into a severe one; "The regulatory scheme [] does not mandate that [] a 'moderate' degree of limitation in one's ability to respond to changes in the workplace setting must be found to be a 'severe' mental impairment").

Most notably, in the <u>Ward case</u> the Ninth Circuit held that the ALJ properly found no severe mental impairment where the claimant's functioning was mildly impaired or unimpaired as to 7 of 8 work activities, and moderately impaired in 1 activity, because the "ALJ must consider all of the

evidence in the record, not just a lone sentence". <u>Ward v. Berryhill</u>, 711 Fed. Appx. 822, 824 (9th Cir. 2017) (unpublished).  Similarly here, Dr. Butler opined Plaintiff was unimpaired or mildly impaired as to 7 of 8 work activities, and only moderately impaired in 1.  As such, Dr. Butler's opinion likewise does not necessarily translate to Plaintiff having a severe mental impairment.

**2.**  **The ALJ's Finding of No Severe Mental Impairment was supported by substantial evidence, as was the ALJ's Rejection of Dr. Butler's Assessment of Plaintiff'**

Assuming that Dr. Butler's opinion as to moderate impairment in handling the stressors of a workplace would—if adopted—be sufficient to meet the severity threshold at step two, the ALJ's rejection of the opinion and associated limitation were well supported, as was the rejection of Plaintiff's related testimony.

Plaintiff challenges each of the ALJ's articulated reasons, including: 1- his activities of daily living and self reports; 2- medical evidence including objective findings on mental status examination and records indicating he was "high functioning" with no history of trauma; and 3- lack of treatment for mental health impairments.

**a)**  **Activities of Daily Living and Self Reports**

Plaintiff disputes the ALJ's reliance on the fact that he was independent in personal care, performed some chores, and was groomed appropriately.  MSJ at 10 (Doc. 16).  Plaintiff contends this was a mischaracterization of the record which reflects he was homeless and living in his car, had no chores to perform other than periodically cleaning his car, and that he needed reminders to groom. *Id.*

As the ALJ noted, the evidence also reflects Plaintiff went out alone, shopped in stores, periodically worked on cars changing oil and brakes, collected cans to recycle, enjoyed woodworking, rode his bike 1 mile each day to the methadone clinic, raked his girlfriend's yard—which took 5 minutes—and took out her trash and took out her dogs.  AR 20, 24, 25.

7

Later in his brief Plaintiff acknowledges he periodically engaged in such activities, but argues that this does not establish a capacity for full time skilled work. MSJ at 14. Although the cited activities do not replicate the rigors and stressors of full-time work, they are in tension with Dr. Butler's opinion that Plaintiff's stress tolerance was significantly limited. The cited activities are also in tension with Plaintiff's related testimony, such as his fear of going outside. AR 44.

On balance, the ALJ's reliance on the cited activities was appropriate. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (ALJ satisfied "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest [he] could return to his old job," but "did suggest that [his] later claims about the severity of his limitations were exaggerated.").

### b) Medical Evidence

Plaintiff disputes the ALJ's emphasis on the intake note from Kings View substance abuse treatment program noting that he denied a history of trauma. MSJ at 11. Plaintiff contends the ALJ overlooked that the same note referenced an abusive relationship with the mother of his children. Id. As Defendant stated in response, and to which Plaintiff did not reply, "Plaintiff stated that he was in an abusive relationship with his ex-girlfriend insofar as they 'used to fight a lot (AR 245),' which does not contradict Plaintiff's concession that he had 'never experienced or witnessed any kind of trauma, abuse, neglect, or sexual abuse' (AR 245, 311)."

Plaintiff also disputes the ALJ's emphasis on a note from the same intake evaluation at Kings View stating Plaintiff's "level of functioning is high." AR 245. Plaintiff explains that "there is absolutely no formal or even informal mental status evaluation associated with the finding," and that it is therefore "highly speculative" to conclude that he is high functioning. MSJ at 12. Importantly though, the intake evaluation is plainly written from Plaintiff's point of view. Thus, if

the statement is speculative, it was Plaintiff, not the treating provider or the ALJ, who was engaged in speculation.  Further, the fact that Plaintiff described himself as high functioning—or made statements giving the provider the impression that he regarded himself as high functioning—is certainly not an irrelevant consideration when assessing the functional impact of Plaintiff's mental health impairments.  The ALJ's partial reliance on that statement was therefore appropriate.

Plaintiff also disputes the ALJ's emphasis on the normal findings that Dr. Butler noted, specifically, normal orientation, normal thought content and normal speech, while failing to explain why or how these findings were more important than other objective findings of poor memory, anxious affect and slowed performance.  MSJ at 11.  Defendant responds that Dr. Butler's findings concerning anxiousness and other positive findings were based on self-reported symptoms.  Resp. at 9.  However, this response is not entirely accurate as Dr. Butler noted that Plaintiff "reported [his] mood was anxious" and then noted <u>objectively</u> that affect was congruent with mood (i.e. anxious).  AR 313.

Nevertheless, one mental status examination reflecting an anxious affect is a relatively unconvincing basis upon which to rest a conclusion that Plaintiff's ability to handle the typical stress of a workplace was significantly impaired.  Although Plaintiff also displayed poor working memory and slowed/poor performance of cognitive tasks, those findings are not particularly probative of stress tolerance.  The remaining objective findings were benign.  AR 313–14.

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  <u>Jamerson</u>, 112 F.3d at 1066; <u>see</u> <u>also</u> <u>Tommasetti</u>, 533 F.3d at 1041 ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence").  The ALJ did not err in finding Dr. Butler's mental status examination findings unsupportive of a moderate impairment in stress tolerance.

c)    <u>**Lack of Treatment for Mental Health**</u>

9

Finally, Plaintiff disputes the ALJ's reliance on the lack of treatment for mental health, aside from an opioid dependence clinic, for a 3 to 4 year period. However, ALJs may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti, 533 F.3d at 1039.

Plaintiff contends the ALJ "failed to consider an explanation for same" as required by Social Security Ruling 16-3p, namely his homelessness and lack of resources. MSJ at 15 (emphasis added). While homelessness and lack of resources could certainly be "an" explanation for lack of treatment, they were not the explanation that Plaintiff testified to here. Rather, the explanation was that his previous clinic closed, and—even though other clinics took his insurance (Calworks)—he hadn't pursued other clinics because he "was just used to the one I was going to." AR 53. Continuity among treating providers is certainly ideal, and the lack thereof can understandably be frustrating. However, that does not excuse the lack of treatment for a condition that allegedly caused significant limitations in work-related functioning.

**VI.    Recommendations**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1.    That Plaintiff's motion for summary judgment (Doc. 16) be **DENIED.**

2.    That Defendant's cross-motion (Doc. 20) be **GRANTED.**

3.    That the decision of the Commissioner of Social Security be **AFFIRMED**.

4.    That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Jose Gambino Menchaca.

**VII.    Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14)

10

days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

    Dated:   **February 16, 2025**                **/s/ Gary S. Austin**

                                          UNITED STATES MAGISTRATE JUDGE