UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GAMBINO MENCHACA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security[1],<br><br>　　　　Defendant. | Case No.: 1:23-cv-1334 JLT GSA<br><br>ORDER ADOPTING THE FINDINGS AND RECOMMENDATIONS, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S REQUEST TO AFFIRM, AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT<br><br>(Docs. 16, 20, and 21) |

Jose Gambino Menchaca seeks judicial review of a final decision denying his application for supplemental security income under Title XVI of the Social Security Act. (Docs. 1, 16.) Plaintiff asserts the ALJ erred in evaluating the record and finding that he does not suffer from a severe mental health impairment. (*See* Doc. 16.) The Commissioner asserts the ALJ's analysis was proper, and substantial evidence supports the ALJ's findings. (Doc. 17.) For the reasons set forth below, Plaintiff's appeal is denied and Commissioner's request to affirm is granted.

**I.     Decision of the ALJ**

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. (Doc. 12-2 at 19-31.) First, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of November 4, 2020. (*Id.* at 21.) Next, the ALJ

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this case.

determined that Plaintiff had the following medically determinable impairments:

> 1) history of polysubstance abuse/addiction (opioid []intravenous (IV) heroin) and methamphetamines (now on methadone maintenance); 2) alcohol use in remission; 3) hepatitis C; 4) hypoglycemia; 5) rash; 6) dermatitis (neck rash); 7) major depressive disorder; 8) unspecified anxiety disorder; 9) gastroesophageal reflux disease (GERD); and 10) lumbar spine problem (mild lumbar spine disc height loss L5-S1/mild anterior marginal spurring L2-5/mild diffuse facet hypertrophy)…

(*Id.* at 21-22.)  However, the ALJ found Plaintiff did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work related activities for 12 consecutive months."  (*Id.* at 23.)  In so finding, the ALJ considered the medical record and testimonial evidence from Plaintiff and a lay witness.  (*See id.* at 23-31.)

The ALJ evaluated Plaintiff's mental impairments using the four functional areas in Section 12.00C of the Listing of Impairments, also known as the "Paragraph B" criteria: (1) "understanding, remembering, or applying information;" (2) "interacting with others;" (3) "concentrating, persisting, or maintaining pace;" and (4) "adapting or managing oneself."  (Doc. 12-2 at 28-30.)  The ALJ found Plaintiff had mild limitations in each of the four functional areas.  (*Id.*)  The ALJ held: "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere."  (*Id.* at 30.)  The ALJ determined that Plaintiff's "physical and mental impairments, considered singly and in combination, [did] not significantly limit the claimant's ability to perform basic work activities."  (*Id.* at 31.)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.*)

**II.     Issues Raised by Plaintiff**

Plaintiff seeks remand for further proceedings, asserting that "[t]he ALJ failed to properly support the finding that Plaintiff does not suffer from a severe mental health impairment."  (Doc. 16 at 13, emphasis omitted.)  Plaintiff contends "anxiety and depression are 'severe' in nature, as these impairments pass the 'de minimus screening' test established in *Webb v. Barnhart*, F.3d 686-687 (9th Cir. 2005), and SSR 85-28."  (*Id.*)  He observes that Dr. Butler performed a consultative examination, and opined Plaintiff was "moderately limited in the ability to handle the usual stressors in the workplace."  (*Id.*, citing AR 313-314 [Doc. 12-2 at 317-18].)  According to Plaintiff, the ALJ erred in

reconciling the findings of Dr. Butler with the record and failed to properly discount the opinion. (*Id.* at 14-16.) Specifically, Plaintiff contends the ALJ "failed to support the rejection of Dr. Butler's opinion that Plaintiff was at least moderately impaired and … thus, indeed met the 'severe impairment' standard." (*Id.* at 17.)

In addition, Plaintiff argues that the ALJ "erred dismissing Plaintiff's subjective complaints." (Doc. 16 at 17.) Plaintiff asserts the ALJ did not properly address factors such as his level of activity, because "the cognitive skill level involved in such acts does not equate to the ability to perform skilled or even semi-skilled work," and his activities were "not evidence of the ability to sustain full time skilled work." (*Id.* at 18-19.) He indicates that he "should not be penalized for attempting to lead normal lives in face of their limitations." (*Id.* at 19, citation omitted.) Plaintiff also asserts the ALJ wrongfully considered his lack of treatment for mental impairments, because the ALJ did not acknowledge that he "is homeless and lacks resources." (*Id.* at 20.) He identifies medical evidence he believes supports his subjective statements. (*Id.* at 20-21.) Plaintiff concludes the record shows he has a severe mental impairment. (*Id.* at 22-23.)

### III.     Findings and Recommendations

The magistrate judge found the evidence upon which Plaintiff relies "does not establish a severe impairment even if adopted." (Doc. 21 at 5.) The magistrate judge observed that Plaintiff "relies heavily, if not exclusively," on the finding from Dr. Butler that Plaintiff was "moderately impaired in his ability to deal with the usual stress encountered in the workplace." (*Id.* at 6, emphasis omitted.). However, the magistrate judge found: "even accepting Dr. Butler's functional assessment in full, including the moderate impairment as to stress intolerance, it would not necessarily establish a severe mental impairment because it would not establish more than mild limitations in the paragraph B criteria …, nor constitute a significant limitation in the claimant's ability to perform basic work activities...." (*Id.*) The magistrate judge observed that the Ninth Circuit determined "a moderate limitation with respect to one work activity does not translate into a severe mental impairment." (*Id.*, citing *Koehler v. Astrue*, 283 Fed. Appx. 443, 445 (9th Cir. 2008); *Ward v. Berryhill*, 711 Fed. Appx. 822, 824 (9th Cir. 2017).) Consequently, the magistrate found that Dr. Butler's opinion "does not necessarily translate to Plaintiff having a severe mental impairment." (*Id.* at 7.)

Next, the magistrate judge found the ALJ properly considered several factors to reject Plaintiff's subjective complaints, including Plaintiff's level of activity, the medical evidence, and Plaintiff's lack of treatment. (Doc. 21 at 7-10.) The magistrate judge determined the ALJ identified activities that were "in tension with Dr. Butler's opinion that Plaintiff's stress tolerance was significantly limited … [and] Plaintiff's related testimony, such as his fear of going outside." (*Id.* at 8.) The magistrate judge also opined, "The ALJ did not err in finding Dr. Butler's mental status examination findings unsupportive of a moderate impairment in stress tolerance." (*Id.* at 9.) Finally, the magistrate judge determined the ALJ properly considered the reasoning Plaintiff's lack of treatment, which Plaintiff did not attribute to homelessness when testifying at the hearing, but rather to closure of the clinic he "was just used to … going to." (*Id.* at 10, quoting AR 53 [Doc. 12-2 at 57].)

The magistrate judge concluded substantial evidence supported the ALJ's finding that Plaintiff did not have a severe mental impairment. (Doc. 21 at 10.) Thus, the magistrate judge recommended the Court deny Plaintiff's motion for summary judgment, grant the Commissioner's cross-motion, and affirm the ALJ's decision. (*Id.*)

**IV.     Objections and Reply**

Plaintiff requests the Court decline to adopt the Findings and Recommendations and remand for further proceedings. (Doc. 22.) Plaintiff contends the magistrate judge erred in stating that "the ALJ must consider all of the evidence in record, not just one lone sentence," and this holding includes "two fallacies": (1) an ALJ must consider "the *number* of assessed limitations, [rather than] the *degree* of assessed limitations" and (2) Plaintiff does not rely only upon "a single sentence" to support his assertion of a severe mental impairment. (*Id.* at 2, emphasis in original.) Plaintiff maintains the ALJ erred in rejecting the opinion of Dr. Butler. (*Id.* at 3-4.) In addition, Plaintiff reiterates the argument raised in his opening brief that ALJ properly rejected his subjective statements. (*Id.* at 4-6; *compare with* Doc. 16 at 17-21.)

The Commissioner filed a response to the objections, "largely [relying] on his earlier brief and the Recommendations." (Doc. 23.) The Commissioner notes that while Plaintiff faults the magistrate judge for considering "the number" of his assessed moderate impairments, the magistrate judge "merely quot[ed] the Ninth Circuit's instruction." (*Id.* at 2.) The Commissioner asserts the magistrate

4

judge properly considered the ALJ's analysis and determined that even if the ALJ accepted the functional assessment, the findings of Dr. Butler "would not necessarily establish a severe mental impairment because it would not 1) establish more than mild limitations in the Paragraph B criteria, or 2) constitute a significant limitation on Plaintiff's ability to perform basic work activities." (*Id.* at 2-3, emphasis omitted.) The Commissioner notes that Plaintiff does not reply to the cases cited by the magistrate judge to support the decision—including *Koehler* and *Ward*—and argues that as a result Plaintiff "forfeited the issue." (*Id.* at 3.)  The Commissioner contends the magistrate judge properly found "the ALJ had satisfied the 'clear and convincing' standard in assessing symptom testimony." (*Id.* at 6; *see also id.* at 3-5.)

## V.     Discussion

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1).  If a party files objections, "the court shall make a determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.*  A *de novo* review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

### A.     Step Two

The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  At step two, a claimant must make a "threshold showing" that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. § 416.922(a).  For an impairment to be "severe," it must significantly limit the claimant's "physical or mental ability to do basic work activities," or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(a)-(b). Plaintiff failed to carry this burden to show his mental impairments are severe.

### B.     Plaintiff's assessed functional abilities

As discussed above, Dr. Butler performed a consultative psychological examination of Plaintiff and made findings regarding Plaintiff's functional abilities.  (Doc. 12-2 at 315-319.)  Dr. Butler opined Plaintiff's "ability to deal with the usual stress encountered in the workplace [was] moderately

1    impaired." (*Id.* at 318.)  However, as Plaintiff acknowledges, Dr. Butler found Plaintiff was "mildly
2    impaired" with other areas of functioning, including performing simple, detailed, and complex tasks;
3    performing "work activities on a consistent basis without special or additional instruction;" and the
4    "ability to maintain regular attendance and complete a normal workday/workweek without interruption
5    from a psychiatric condition." (*Id.*; *see also* Doc. 16 at 8-9.)  Dr. Butler also determined Plaintiff was
6    "unimpaired" with the abilities "to accept instruction from a supervisor" and "interact with coworkers
7    and the public." (*Id.*)

8          The ALJ reviewed the evidence and found the determination that Plaintiff had a "moderate"
9    limitation was "not persuasive" because was not supported by the physician's own observations or
10   Plaintiff's self-reports at the consultative examination. (Doc. 12-2 at 28, citation omitted.)  In
11   addition, the ALJ determined the finding was not consistent with other evidence, including "an earlier
12   treating examination of a normal mood and affect or with an even earlier observation at intake
13   assessment for substance use treatment that the claimant was high functioning." (*Id.*, citation omitted.)
14   Towards this end, the ALJ considered the required supportability and consistency factors in addressing
15   the decision of Dr. Butler.[2]  *See Woods v. Kijakazi,* 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20
16   C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the
17   supportability and consistency factors for a medical source's medical opinions or prior administrative
18   medical findings in your determination or decision").

19         Even if the ALJ did not properly find the moderate limitation was "not persuasive," the Ninth
20   Circuit expressly determined such a moderate limitation "does not mandate" a conclusion that a
21   claimant's impairment is "severe" at step two.  *Koehler*, 283 Fed. Appx. at 445; *see also Ward*, 711
22   Fed. Appx. at 824.  Indeed, in *Koehler*, the *same* moderate limitation was in issue: the ability to
23   respond to changes in the workplace setting.  The Court explained, "The regulatory scheme … does not
24   mandate that the diagnosis of a 'moderate' degree of limitation in one's ability to respond to changes in
25   the workplace setting must be found to be a 'sever[e]' mental impairment." *Koehler*, 283 Fed. Appx. at

---

[2] The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (internal quotation marks omitted).  On the other hand, consistency compares an opinion with other evidence to determine its persuasiveness. *See Woods*, 32 F.4th at 792.

445. Similarly, in *Ward*, the Court found an ALJ did not err in finding the claimant did not have a severe mental impairment, despite a physician's determination that Ward was "moderately impaired" with the ability to "maintain regular attendance in the work place and perform work activities on a consistent basis." *Ward*, 711 Fed. Appx. at 824. The Court explained, "An ALJ must consider all of the evidence in the record, *not just a lone sentence.*" (*Id.*, emphasis added.) The Court noted the ALJ considered the physician's decision, which included finding that Ward was "unimpaired" and "mildly impaired" with other functional areas. *Id.* Therefore, the Court rejected Ward's assertion that the one moderate impairment "means that [he] has a severe mental impairment." *Id.*

As the Ninth Circuit determined in *Koehler* and *Ward,* the one "moderate" limitation identified by Dr. Butler neither undermines the ALJ's findings nor mandates a finding that Plaintiff has severe mental impairments. Moreover, the decision of the ALJ is supported by the medical opinions of Drs. Schwartz and Cosgrove, who reviewed the medical record—including the findings from Dr. Butler—and found Plaintiff's mental impairments were not severe. (Doc. 12-2 at 30, 70, 83-84.)

### C. Plaintiff's subjective statements

To evaluate a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036. The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Doc. 12-2 at 24.) However, the ALJ also determined "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent…" (*Id.*)

Evaluating Plaintiff's subjective complaints, the ALJ considered Plaintiff's level of activity, lack of work history, the treatment sought and received, and inconsistencies with the medical record. (Doc. 12-2 at 24-25, 28.) The parties dispute whether the reasons identified by the ALJ are "clear and convincing" reasons.

///

### 1. Plaintiff's work history

As an initial matter, the ALJ observed: "While the claimant said he had not worked full-time since the amended alleged onset date, he admitted at the hearing that he had never had a real job in the past because he had spent a lot of time in prison." (Doc. 12-2 at 24.) The ALJ observed that "[t]his peaks to an unavailability for work, not to symptoms that have limited his ability to work." (*Id.*) In addition, the ALJ noted Plaintiff "admitted that he had engaged in casual work in the past and had continued to do so since the alleged onset date," including working on cars, "changing oil, or working on brakes." (*Id.*)

Importantly, a claimant's work record—or the lack thereof—can be considered in evaluating the credibility of subjective complaints. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (noting the claimant's "extremely poor work history"); 20 C.F.R. § 416.929(c)(3) ("We will consider all of the evidence presented, including information about your prior work record"). The ALJ did not err in considering Plaintiff's work history in evaluating his statements concerning the severity of his symptoms. *See, e.g., Taylor v. Colvin,* 618 Fed. Appx. 342, 343 (9th Cir. 2015) ("the ALJ also reasonably took into account [claimant's] poor work history"); *Kimmel v. Comm'r of Soc. Sec.*, 2018 WL 4204786, at *6-7 (E.D. Cal. Aug. 31, 2018) (finding the "ALJ reasonably found that Plaintiff's poor work history suggested that his current unemployment might not be due to any impairment," even where the claimant reported "his history of incarceration" explained the poor work history). Therefore, Plaintiff's work history was a clear and convincing reason to support the ALJ's decision.[3]

### 2. Plaintiff's reported activities

A claimant's level of activity may support an ALJ's determination to give less weight to his subjective statements. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citation omitted). In addition, the Ninth

---

[3] Although Plaintiff acknowledged his testimony concerning working on cars, he did not challenge the ALJ's consideration of his work history. (Doc. 16 at 19.) Thus, any challenge to this factor was waived. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (argument not made in a claimant's opening brief was deemed waived); *Zango v. Kaspersky Lab, Inc*., 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived").

8

Circuit determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). For example, the Ninth Circuit determined the ability to cook, clean, do laundry and manage finances may support an adverse finding of credibility. *Stubbs-Danielson*, 539 F.3d at 1175. The Ninth Circuit explained, "Even where ... activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Stubbs-Danielson*, 539 F.3d at 1175; *see also Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was").

The ALJ found that Plaintiff's activities—including working on cars, riding a bike to a clinic each day, performing household chores, and preparing simple meals— were "not suggestive of limitations that would prevent him from engaging in work-related activities due to physical or mental symptoms." (Doc. 12-2 at 25.) Significantly, the identified activities are like those the Ninth Circuit found sufficient in *Stubbs-Danielson* to support the rejection of the claimant's statements. *See Stubbs-Danielson*, 539 F.3d at 1175; *see also Curry*, 925 F.2d at 1130 (a claimant's ability to care for personal needs, "prepare easy meals, do light housework, and shop for some groceries," may be viewed as "inconsistent with the presence of a condition which would preclude all work activity"). Thus, the capabilities and activities identified by the ALJ support the decision to give less weight to Plaintiff's testimony concerning the severity of his symptoms.

### 3.     Inconsistent statements

The ALJ found Plaintiff made inconsistent statements concerning his abilities and symptoms. (Doc. 12-2 at 24.) As one example, the ALJ observed that Plaintiff "related that he had difficulty reading" at the hearing. (*Id.* at 24.) On the other hand, the ALJ noted Plaintiff also "denied reading difficulties with medication labels and forms" when talking to a primary care provider. (*Id.* at 25.)

Plaintiff contends "no such allegation exists" concerning difficulty reading. (Doc. 16 at 21.) However, this is contradicted by his testimony at the hearing. When Plaintiff was asked if he would

have difficulty with a job providing "a list of things that [he] needed to complete," Plaintiff responded, "Well … I don't know how to read too good" and following a written list would be difficult. (*Id.* at 50-51.) Plaintiff's argument that the ALJ did not properly identify inconsistent statements concerning his reading ability is unavailing. Inconsistent statements, such as those Plaintiff made, are a clear and convincing reason supporting the ALJ's decision. *See Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (an ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony the claimant that appears less than candid") (citation omitted).

### 4. Treatment received

An ALJ may consider "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff contends the ALJ erred in considering his lack of treatment, because he was homelessness.[4] However, the ALJ observed that *even when* Plaintiff sought treatment, it was not for mental health. Rather, the ALJ found treatment Plaintiff received was "narrow" and "inconsistent with the claimant's allegations of … mental symptoms." (Doc. 12-2 at 25-26.) Further, the ALJ observed that the record also "contain[s] express denials of ... mental symptoms such as depression." (*Id.* at 26; *see also id.* at 28.) The ALJ opined, "The absence of treatment records addressing mental conditions other than an opioid use disorder during the relevant period is not consistent with significant symptoms or limitations." (*Id.* at 28.) Plaintiff fails to show the ALJ erred with these findings related to the treatment sought and received. The "narrow" treatment sought and provided is a clear and convincing reason that supports the ALJ's decision. *See Fair*, 885 F.2d at 604 (when "pain is not severe enough to motivate [the claimant] to seek treatment…, and if [he] remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving" an inability to work).

### 5. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be a clear and convincing reason to reject a claimant's

---

[4] Notably, Plaintiff did not attribute his lack of treatment to his homelessness at the administrative hearing. Rather, as the ALJ observed, Plaintiff testified that a clinic where he received treatment shut down, and he did not go to other available clinics because he "was just used to going to the one [he] was going to." (Doc. 12-2 at 28, 57.)

10

subjective testimony. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the rejection of Plaintiff's subjective statements solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in evaluating his subjective complaints.

However, if an ALJ cites the medical evidence, it is insufficient for the ALJ to make a general finding that the record contradicts the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Instead, an ALJ must identify "what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Towards this end, unless the ALJ links the claimant's testimony to the medical record summary, the summary is insufficient to reject subjective statements. *Brown-Hunter*, 806 F.3d at 493; *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (finding the ALJ erred by "offering non-specific conclusions that Lambert's testimony was inconsistent with her medical treatment"). In addition, district court may not review an ALJ's summary of the record to itself establish a link between a claimant's testimony and the record. In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F.3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about the plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the specific testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

In contrast to *Brown-Hunter* and *Lambert*, the ALJ sufficiently carried the burden to link Plaintiff's subjective statements to the record. For example, the ALJ found: "Despite the claimant's

allegations of back pain, gastrointestinal symptoms, and mental symptoms, treatment records mainly center on treatment for a skin rash and participation in a methadone maintenance program to treat an opioid use disorder related to heroin use." (Doc. 12-2 at 25, citations omitted.)  Although the link between Plaintiff's statements and the medical record may be minimal, the analysis is sufficient to show the ALJ considered Plaintiff's testimony while discussing the medical record, and the ALJ carried the burden to identify evidence that contradicted the testimony concerning the severity of his symptoms.  *Compare with Holcomb v. Saul*, 832 Fed. App'x. 505, 506 (9th Cir. Dec. 28, 2020) (finding no link where "the ALJ never mentioned [the claimant's] symptom testimony while discussing the relevant medical evidence").

### 6. Conclusion

Where the ALJ makes "a reasonable interpretation" of the claimant's testimony in light of the evidence, "it is not [the Court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ALJ carried the burden to identify clear and convincing reasons to reject Plaintiff's subjective complaints and set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

## VI.     Order

According to 28 U.S.C. § 636(b)(1), the Court performed a *de novo* review of this case. Having carefully reviewed the entire matter—including Plaintiff's objections and the Commissioner's response—the Court concludes the Findings and Recommendations are supported by the record and proper analysis.  The Court must affirm the administrative decision because substantial evidence supports the ALJ's findings.  Thus, the Court **ORDERS**:

1. The Findings and Recommendations (Doc. 21) are **ADOPTED** in full.
2. Plaintiff's motion for summary judgment and request for remand (Doc. 16) are **DENIED**.
3. Defendant's request to affirm the administrative decision (Doc. 20) is **GRANTED**.

///

///

4. The Clerk of Court is directed to terminate pending motions; enter judgment in favor of defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Jose Gambino Menchaca; and to close this case.

IT IS SO ORDERED.

Dated:     **September 1, 2025**

_____
UNITED STATES DISTRICT JUDGE